UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| NINILCHIK NATIVE ASSOCIATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | 3:10-cv-00075 JWS |
| vs. | ) ) | ORDER AND OPINION |
| COOK INLET REGION, INC., | ) ) | [Re:   Motion at Docket 5] |
| Defendant. | ) ) ) | |

## I. MOTION PRESENTED

At docket 5, defendant Cook Inlet Region, Inc. ("CIRI") moves for an order requiring plaintiff Ninilchik Native Association, Inc. ("Ninilchik") to join required[1] parties, or in the alternative, for dismissal of this action pursuant to Federal Rule of Civil Procedure 19. At docket 10, Ninilchik opposes the motion. CIRI replies at docket 12. Oral argument was not requested, and it would not assist the court.

## II. BACKGROUND

Plaintiff Ninilchik is an Alaska Native Village Corporation formed pursuant to the Alaska Native Claims Settlement Act of 1971, 43 U.S.C. § 1601, *et seq.* ("ANCSA").

---

[1]In its briefing, CIRI uses the term "necessary." However, the language of Federal Rule of Civil Procedure 19 was amended in 2008 and the word "required" replaced the word "necessary." The Rules Committee advised that the changes were stylistic only. *See Fed. R. Civ. P. 19 advisory comm. nn. (2008)*. However, this court will use the word "required" in place of "necessary" in this order.

Defendant CIRI is an Alaska Native Regional Corporation formed pursuant to ANCSA. As part of a comprehensive settlement of aboriginal land claims, ANCSA provided for the withdrawal, selection, and conveyance of approximately 44 million acres of federal land within the State of Alaska to Native regional and village corporations.[2]

Under ANCSA, the United States Department of the Interior ("Interior") was mandated to withdraw all available public lands in a township in which any Native village was located, as well as all public lands in two concentric rings of townships around each village.[3] Section 12(a) of ANCSA (43 U.S.C. § 1611(a)) authorized each village to select a designated number of acres from these withdrawn lands for conveyance to the village corporation ("§ 12(a) selections").[4] Section 12(b) of ANCSA (43 U.S.C. § 1611(b)) required Interior to allocate additional lands to each regional corporation on the basis of Native population.[5] The regional corporations were then required to distribute those § 12(b) lands among their constituent village corporations.[6]

Ninilchik is a village corporation within the Cook Inlet region of Alaska.[7] CIRI is the regional corporation for the Cook Inlet region.[8] There are other Native corporations and associations relevant to this dispute that are also located within the Cook Inlet

---

[2]Except as otherwise noted, facts in this section are taken from plaintiff's complaint. None appear to be in dispute. This order presents an abbreviated history of the relationship between the parties and a succinct description of certain ANCSA provisions which bear on the motion before the court. A fuller recitation of the history between Ninilchik and CIRI is presented in *Cook Inlet Region, Inc. v. Ninilchik Native Association, Inc.*, *et al.*, 3:09-cv-00035-JWS, Order at Docket 34. A more complete discussion of ANCSA and agreements relevant to this case entered after ANCSA's enactment is set forth in *Seldovia Native Assoc., Inc. v. United States*, 144 F. 3d 769 (Fed. Cir. 1998) and *Chickaloon-Moose Creek Native Assoc., Inc. v. Norton*, 360 F.3d 972 (9th Cir. 2004).

[3]Complaint, doc. 1 ¶ 9.

[4]*Id.* at ¶ 10.

[5]*Id.* at ¶ 11.

[6]*Id.*

[7]*Id.* at ¶ 12.

[8]*Id.*

-2-

region, including: Alexander Creek Native Association, Inc., Chickaloon-Moose Creek Native Association, Inc., Knikatnu, Inc., Salamatof Native Association, Inc., Seldovia Native Association, Inc., and Tyonek Native Corporation (the "other villages").[9]

ANCSA mandated that all Alaska Native villages make their § 12(a) land selections by December 1974. However, due to uncertainty surrounding the eligibility of two villages in the Cook Inlet region, Interior did not specifically designate land withdrawals for each village, and instead withdrew a single block of land for the group of villages in this region, thus requiring the villages to compete for the same land.[10] In response, the villages made their § 12(a) selections in a series of rounds, similar to a professional sports draft.[11] To resolve the uncertainty about the eligibility of two of the villages, all of the villages conducted four distinct rounds selections, which were labeled Methods A, B, C, and D.[12] Each round was based upon a mutually exclusive hypothetical with respect to the eligibility for village status of Alexander Creek and Salamatof.[13] The villages filed their § 12(a) selections with Interior by the December 1974 deadline.[14]

In May 1976, the Bureau of Land Management ("BLM") rejected many of the § 12(a) selection claims filed by the village corporations in the Cook Inlet region.[15] Because ANCSA contained no provision authorizing re-submission of new selections

---

[9] *Id.* at ¶ 13.

[10] *Id.* at ¶ 15.

[11] *Id.* at ¶ 16.

[12] *Id.*

[13] In Method A, both Alexander Creek and Salamatof were presumed eligible to participate in the land selection process. In Method B, Salamatof was presumed eligible, but Alexander Creek was not. In Method C, Alexander Creek was presumed eligible, but Salamatof was not. In Method D, neither village was presumed eligible. Ultimately, Salamatof was determined to be eligible and Alexander Creek was not, making Method B the operative method. *Id.* at ¶¶ 16, 29.

[14] *Id.* at ¶ 17.

[15] *Id.* at ¶ 21.

after the 1974 statutory deadline, the villages feared they would lose significant portions of their § 12(a) entitlements.[16] As a result, the villages authorized CIRI, through an agreement titled the "12(a) Conveyance Agreement," to pursue a legislative solution that would restore the villages' § 12(a) entitlements.[17] The 12(a) Conveyance Agreement proposed that CIRI would receive title to the lands from the United States and subsequently reconvey those lands to the village corporations guided by a set of standards.[18] The 12(a) Conveyance Agreement states, "[u]nless the affected village corporations otherwise agree, their § 12(a) selections, including the specific tract selected and the priorities listed in those selections, shall govern."[19]

In August 1976, CIRI and Interior entered into an agreement known as the "Deficiency Agreement."[20] The Deficiency Agreement proposed the transfer of withdrawn lands from the federal government to CIRI for retransfer to the village corporations.[21] The Deficiency Agreement partitioned lands eligible for transfer into two separate appendices: Appendix A and Appendix C.[22] Due to this partitioning, the villages' § 12(a) selection lands from the operative Method B round were divided between Appendices A and C of the Deficiency Agreement.[23]

In November 1986, the federal government conveyed to CIRI lands described in Appendix A of the Deficiency Agreement.[24] After CIRI reconveyed to the villages their

---

[16] *Id.* at ¶ 22.

[17] *Id.* at ¶ 23.

[18] *Id.* at ¶ 24.

[19] The parties have not provided the court with a copy of the 12(a) Conveyance Agreement. As a result, the quoted text is taken directly from plaintiff's complaint. *Id.* at ¶ 25.

[20] *Id.* at ¶ 30.

[21] *Id.*

[22] *Id.*

[23] *Id.* at ¶ 31.

[24] *Id.* at ¶ 35.

-4-

§ 12(a) selections from those listed in Appendix A, it requested that Interior convey the villages' § 12(a) selections from the land listed in Appendix C.[25] However, Interior notified CIRI that pursuant to the Deficiency Agreement, it was not entitled to conveyance of Appendix C lands because there were Appendix A lands that remained unselected, and Appendix C lands could not become available until all Appendix A lands were distributed.[26] Despite Interior's refusal to convey Appendix C lands to CIRI, all of the villages in the region, except Ninilchik, were able to fulfill their § 12(a) entitlements because the § 12(a) selections they made in the Method B round were later partitioned as Appendix A lands.[27] Ninilchik had made § 12(a) selections in the Method B round that were later partitioned as Appendix C lands.[28]

CIRI protested Interior's decision not to convey Appendix C lands. Interior's position was upheld by an opinion of the Solicitor in 1994 that was later adopted by the Assistant Secretary for Lands and Minerals Management.[29] CIRI and the villages subsequently filed suit in the district court. The court upheld Interior's interpretation of the Deficiency Agreement and ruled that Interior could convey lands from Appendix C only if the lands from Appendix A were insufficient to meet the villages' statutory entitlements.[30] CIRI and the villages appealed, and the Ninth Circuit upheld the decision of the district court.[31] The court held that Ninilchik "must fulfill its § 12(a) entitlement from Appendix A land not subject to other villages' § 12(a) selections."[32]

---

[25] *Id.* at ¶ 37.

[26] *Id.* at ¶ 38.

[27] *Id.* at ¶ 41.

[28] *Id.* at ¶ 40.

[29] *Id.* at ¶ 42.

[30] *Id.* at ¶ 43.

[31] *Chickaloon-Moose Creek Native Ass'n*, 360 F.3d 972.

[32] *Id.* at 984.

In April 2008, Ninilchik delivered to CIRI a document entitled "Request for Reconveyance," in which it identified § 12(a) selections from available Appendix A lands.[33] In its § 12(a) selections, Ninilchik requested lands that have been identified as potential sites for a port and road for the Pebble Mine, which Ninilchik acknowledges might be financially advantageous for the village, depending on future development.[34] Ninilchik concedes that the other villages publically opposed its § 12(a) selections at that time.[35] As a result, CIRI notified Ninilchik that it would not convey the lands Ninilchik selected in its Request for Reconveyance absent a release of liability from the other villages.[36]

In an attempt to resolve the dispute, in August 2008, the villages and CIRI entered into an agreement entitled "Consent to Conveyance," in which each village agreed that CIRI would convey to the villages their § 12(a) selections from the Method B round, pursuant to the 12(a) Conveyance Agreement.[37] The villages also waived their right to sue CIRI or each other over the § 12(a) conveyances.[38] In relevant part, the Consent agreement states:

> The parties mutually consent to the Section 12(a) Conveyances by CIRI pursuant to the Village 12(a) Agreement, and each party releases and forever discharges each other party from any and all claims, complaints, causes of action, proceedings, lawsuits, damages, losses, costs, expenses, and legal objections of any kind ("Claims") to the Section 12(a) Conveyances under the Village 12(a) Agreement, the Village 12(b) Agreement, the Deficiency Agreement, the Terms and Conditions, or any other contract, undertaking or agreement, or under ANCSA or any provision of state, federal or local law.[39]

---

[33] Doc. 1 ¶ 68.

[34] *See generally id.* at ¶¶ 59-64.

[35] *Id.* at ¶ 70.

[36] *Id.* at ¶ 71.

[37] *Id.* at ¶ 72.

[38] *Id.* at ¶ 72.

[39] Memorandum in Support of Motion, doc. 6, Exhibit B at p. 3.

Ninilchik, however, reserved all of its rights and remedies related to its § 12(a) entitlement:[40]

> Nothing in this Consent to Conveyance shall be construed to waive or release any Claim of any kind, under any agreement or law referenced in paragraph 2 [the above referenced excerpt], relating to lands, or the right to lands, other than the Section 12(a) Conveyances. The parties expressly acknowledge that conveyance of the Section 12(a) Conveyances may not satisfy Ninilchik Native Association Inc.'s ("NNAI's") 12(a) land entitlement under the Village 12(a) Agreement and ANCSA, and NNAI reserves all rights and remedies related to its additional entitlement, except the right to contest the Section 12(a) Conveyances, as more fully described in paragraph 2 above and authorized herein.[41]

The issue of Ninilchik's § 12(a) entitlement was not resolved by the Consent to Conveyance. Ninilchik alleges in its Complaint that CIRI and the villages have discussed a number of alternative ways to resolve Ninilchik's § 12(a) entitlement.[42] However, the parties have not been able to come to an agreement as to whether Ninilchik should be able to select its § 12(a) entitlements from the unselected Appendix A lands, or whether CIRI has the authority to convey lands to Ninilchik that the village selected in Methods A, C, and D during the 1974 rounds selection process.

In February 2009, CIRI filed an interpleader complaint asking this court to resolve the dispute over whether CIRI should convey the lands Ninilchik selected in its Request for Reconveyance. In July 2009, this court granted Ninilchik's motion to dismiss for lack of subject matter jurisdiction because the issue was not ripe.[43] In December 2009, CIRI rejected Ninilchik's Request for Reconveyance and instead sent Ninilchik deeds to lands chosen by CIRI that Ninilchik had listed in the inoperative Methods A, C, and D rounds of

---

[40]Doc. 1 ¶ 72.

[41]Doc. 6, Exhibit B at pp. 3-4.

[42]*Id.* at ¶ 54.

[43]*Cook Inlet Region, Inc. v. Ninilchik Native Association, Inc., et al.*, 3:09-cv-00035-JWS, Order at Docket 34 at p. 10.

-7-

land selections.[44] The other villages received deeds to the § 12(a) selection lands they had chosen in the Method B round.[45] In response, Ninilchik rejected the deeds that CIRI delivered.[46]

In April 2010, Ninilchik filed the Complaint that gives rise to the instant action. In it, Ninilchik alleges that each village in the Cook Inlet region has received and accepted its § 12(a) conveyance and has waived any right to sue in protest over § 12(a) conveyances to the other villages.[47] Ninilchik also alleges that CIRI does not have any remaining obligations to convey land to the other village corporations under the § 12(a) Conveyance Agreement.[48] It argues that CIRI is obligated under 43 U.S.C. §§ 1601-1642 and related provisions to convey to Ninilchik the lands selected and identified in its Request for Reconveyance.[49] Ninilchik further alleges that a failure to convey the lands it requested is a breach of the § 12(a) Conveyance Agreement and other related ANCSA agreements.[50] Ninilchik now asks the court to order CIRI to satisfy Ninilchik's ANCSA §12(a) entitlements by conveying title to the lands identified and prioritized in its Request for Reconveyance.[51]

CIRI replied with a 12(b)(7) motion requesting the court to issue an order requiring Ninilchik to join the other villages under Federal Rule of Civil Procedure 19, or, in the alternative, for a dismissal.[52] CIRI argues that the tracts of land requested by Ninilchik in its Request for Reconveyance are among lands that the other villages have a legal claim

---

[44]Doc. 1 ¶ 75.

[45]*Id.* at ¶ 74.

[46]*Id.* at ¶ 76.

[47]*Id.* at ¶ 78.

[48]*Id.* at ¶ 79.

[49]*Id.* at ¶¶ 80, 82.

[50]*Id.* at ¶ 85.

[51]*Id.* at ¶ 86.

[52]Doc. 6 at p. 1.

-8-

to under an agreement called the "§ 12(b) Selection Agreement." In the § 12(b) Selection Agreement, each village filed overlapping, blanket § 12(b) selections on all of the ANCSA lands Interior had approved for the Cook Inlet region until a future date when the parties could meet and prioritize their § 12(b) selections.[53] As a result, CIRI contends that the lands available to the villages for their § 12(b) entitlements are the same lands from which Ninilchik's § 12(a) selections must be made.[54] CIRI contends that the villages should be joined because they have a legally protected interest in the availability of land from which their § 12(b) selections are to be made and because failure to join these parties may expose CIRI to "multiple, or otherwise inconsistent obligations."[55]

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(7) permits a party to challenge by pre-answer motion the complaint's failure to join a required party under Federal Rule of Civil Procedure 19.[56] A court's review of a Rule 19 motion is a two-part inquiry. First, a court must decide whether the parties are required parties "who should normally be joined under the standards of Rule 19(a)."[57] Second, if a party is found to be required under Rule 19(a), "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed" pursuant to Rule

---

[53]*Id.* at pp. 6-7.

[54]*Id.* at p. 9.

[55]*Id.* at p. 10.

[56]Fed. R. Civ. P. 12(b)(7).

[57]*Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. California*, 547 F.3d 962, 969 (9th Cir. 2008) (quoting *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022 (9th Cir. 2002)).

19(b).[58] Evaluation of a Rule 19 motion is "practical" and "fact specific."[59] The moving party bears the burden of persuasion when arguing for dismissal.[60]

## IV. DISCUSSION

A movant has two avenues through which it may succeed in showing that a party is required and should be joined under Rule 19(a). First, a party is required if, in its absence, "the court cannot accord complete relief among existing parties."[61] Second, a party is required if the movant can show that the party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."[62]

Traveling along the first avenue, a party is required to be joined under Rule 19(a)(1)(A) if complete relief cannot be granted in its absence. "This factor is concerned with consummate rather than partial or hollow relief as to those already parties . . . ."[63] The court's analysis should include an inquiry into "whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties."[64] CIRI does not argue in its briefing that the district court could not provide Ninilchik with complete relief without joining the other villages in this case.

---

[58]Fed. R. Civ. P. 19(b).

[59]*Cachil Dehe*, 547 F.3d at 970 (quoting *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)).

[60]*Makah*, 910 F.2d at 558.

[61]Fed. R. Civ. P. 19(a)(1)(A).

[62]Fed. R. Civ. P. 19(a)(1)(B).

[63]*Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004) (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983)).

[64]*Id.*

Using the second avenue, a moving party is required under Rule 19(a)(1)(B) to show the absent party claims a "legally protected" interest in the litigation.[65] The interest at stake need not be "property in the sense of the due process clause,"[66] but it "must be more than a financial stake, and more than speculation about a future event."[67] Freedom from competition, without more, is not "legally protected."[68] However, a legally protected interest could exist if it "arises from terms in bargained contracts" that a party is seeking to invalidate, but not if a party is seeking to enforce a contract provision that will affect other parties "only incidentally."[69]

CIRI contends that the other villages are required parties to this litigation under Rule 19(a)(1)(B) because they have a legally protected interest in their § 12(b) entitlements.[70] CIRI argues that the villages' legally protected interest will be impaired if this action is adjudicated in their absence because the land sought by Ninilchik is among the same land that the other villages have asserted should be available for § 12(b) entitlement selection by all village corporations.[71]

CIRI cites *Wilbur v. Locke*[72] to support the proposition that all parties to the § 12(a) Conveyance Agreement must be joined in any litigation where the court is asked to resolve the proper interpretation of that Agreement.[73] However, *Wilbur* stands for the principle that a party to a contract is required in "litigation seeking to decimate that

---

[65]*Cachil Dehe*, 547 F.3d at 970 (quoting *Makah*, 910 F.2d at 558).

[66]*Id.* (quoting *Am. Greyhound Racing*, 305 F.3d at 1023).

[67]*Id.* (quoting *Makah*, 910 F.2d at 558).

[68]*Id.* at 971.

[69]*Id.* at 972.

[70]Doc. 6 at p. 9.

[71]*Id.*

[72]423 F.3d 1101 (9th Cir. 2005).

[73]Doc. 6 at p. 9.

contract."[74] There, the plaintiffs would have had to establish the illegality of a contract in order to succeed on the merits of their claims.[75] The court found that a non-party to the litigation had an interest in retaining the rights granted by the contract, and therefore the party had a legally protected interest in the litigation.[76]

In the instant case, Ninilchik asks the court to satisfy its ANCSA § 12(a) entitlements by conveying title to the lands it identified in its Request for Reconveyance.[77] If Ninilchik were to prevail on its claims, the court could provide complete relief to Ninilchik by providing title to the land it seeks without invalidating any of the agreements signed by the other villages. While the court's decision in this case could incidentally affect the § 12(b) selections of the other villages, this impact does not create a legally protected interest requiring the villages to be joined.[78] That the other villages may wish to be free from competition for potentially valuable lands is also not a sufficient basis for the court to find a legally protected interest necessitating joinder.

Furthermore, "[w]here a party is aware of an action and chooses not to claim an interest, the district court does not err by holding that joinder [i]s 'unnecessary'."[79] Here, Ninilchik attached documentation to its briefing indicating that it sent letters on two occasions to each of the other villages informing them about the instant lawsuit and asking whether the villages claimed an interest in the lands Ninilchik seeks in its Request for Reconveyance.[80] Neither Ninilchik nor CIRI has presented any arguments or documentation to indicate that the other villages responded and claimed an interest in

---

[74]423 F.3d at 1113 (quoting *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 275 F.3d 1150, 1157 (9th Cir. 2002)).

[75]*Id.* at 1112.

[76]*Id.*

[77]Doc. 1 ¶ 86.

[78]*See Cachil Dehe*, 547 F.3d at 972.

[79]*Altman v. Republic of Austria*, 317 F.3d 954, 971 (9th Cir. 2002) (citing *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999)).

[80]Opposition, doc. 10, Attachments A, B.

-12-

the lands that Ninilchik seeks. Moreover, none of the other villages have sought to intervene in this action.

CIRI next argues that the other villages are required parties to this action under Rule 19(a)(1)(B)(ii) because failure to join them could expose CIRI to "multiple, or otherwise inconsistent obligations."[81] The Ninth Circuit has adopted the definition of "inconsistent obligations" endorsed by the First Circuit:

> Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.[82]

CIRI claims that, without the other villages joined to this action, it could be bound by inconsistent interpretations of its proper duties under ANCSA and the various agreements designed to implement that Act.[83] As an example, CIRI suggests that "in one case, a court might uphold CIRI's final [§] 12(a) determinations, and in another case, a court might order CIRI to convey to Ninilchik its 2008 [§] 12(a) selections."[84] However, the mere possibility that CIRI could have to abide by one court's decision to allocate to Ninilchik the lands it seeks in its Request for Reconveyance, while adhering to a different interpretation of the § 12(a) Conveyance Agreement in its dealings with the other villages in possible future litigation over § 12(b) entitlements, without more, does not create a "substantial risk" of incurring "inconsistent obligations" pursuant to Rule 19(a).[85]

Furthermore, Ninilchik and CIRI disagree as to whether, by signing the Consent to Conveyance, each village waived its rights to sue over § 12(a) conveyances to the other

---

[81]Doc. 6 at p. 10 (citing Fed. R. Civ. P. 19(a)(1)(B)(ii)).

[82]*Cachil Dehe*, 547 F.3d at 976 (quoting *Delgado v. Plaza Las Americas, Inc.,* 139 F.3d 1, 3 (1st Cir. 1998)).

[83]Doc. 6 at p. 10.

[84]*Id.*

[85]*See Cachil Dehe*, 547 F.3d at 976.

villages.[86]  However, even assuming the villages did not waive their rights to sue over CIRI's § 12(a) conveyances to Ninilchik, it would be speculative for the court to assume that they would sue CIRI in the future if they were not joined in this action.  CIRI claims that Ninilchik's § 12(a) entitlement claim should be decided together with all of the other villages' § 12(b) entitlement issues.[87]  However, while there may be only one "pot" of land subject to competing demands, it does not follow that the other villages will necessarily litigate over the lands Ninilchik seeks in this action.  The other villages may well wish for the decades of litigation over § 12(a) entitlements to come to a close and for all parties to move forward expeditiously with their § 12(b) selections.  Furthermore, CIRI has not persuasively shown in its briefing that the parties claim an interest in joining this litigation, let alone that they are inclined to sue CIRI over Ninilchik's selections.

"Only if the absent parties are "[required]" and cannot be joined must the court determine whether in "equity and good conscience" the case should be dismissed under Fed. R. Civ. P. 19(b)."[88]  Because the court does not find the other villages to be required parties pursuant to Rule 19(a), it need not consider whether the case should be dismissed under Rule 19(b).

## V. CONCLUSION

For the reasons set out above, the defendant's motion at docket 5 to join required parties or dismiss is **DENIED**.

DATED at Anchorage, Alaska, this 6th day of August 2010.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[86]Doc. 1 ¶ 78; Doc. 6 at p. 10.

[87]Reply, doc. 12 at p. 10.

[88]*Makah*, 910 F.2d at 559.